THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE CivLR 7.1(a)(1)
(Rule Number/Section)
7.1(b)(1)

IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PHOENIX DIVISION

| | | |
|---|---|---|
| WILLIAM MANER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Case No. |
| vs. | § | |
| | § | CV-16-3651-PHX-DGC |
| DIGNITY HEALTH f/k/a | § | |
| CATHOLIC HEALTHCARE WEST | § | |
| | § | TRIAL BY JURY DEMANDED |
| Defendant. | § | |

FILED ___ LODGED ___
RECEIVED ___ COPY ___
OCT 21 2016
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

WILLIAM MANER, (hereinafter "Plaintiff"), files this Complaint against DIGNITY HEALTH f/k/a CATHOLIC HEALTHCARE WEST (hereinafter "Defendant") and for cause of action would show the Court as follows:

### INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint after dismissal without prejudice in the United States District Court for the Southern District of Texas, Galveston Division.

3. Plaintiff files this Complaint and complains about sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

4. Plaintiff files this Complaint and complains of breach of contract.

5. This action seeks compensatory and punitive damages, plus lost wages (past, present, and future), liquidated damages, plus attorney's fees, taxable court costs, pre-judgment and post-judgment interest.

## PARTIES

6. Plaintiff, WILLIAM MANER, is a resident of La Marque, Texas.

7. Defendant, DIGNITY HEALTH f/k/a CATHOLIC HEALTHCARE WEST, is a corporation authorized to do business in the state of Arizona and headquartered in California, with work conducted for its benefit at the Labor & Delivery Ward and Maternal Fetal Medicine Division of the Obstetrics and Gynecology Department at The University of Texas Medical Branch, 301 University Boulevard, Galveston, Texas 7755 (hereinafter "UTMB") and at the facilities at Reproductive Research Technologies, LP, 1770 St. James Place, Suite 600, Houston, Texas 77056-3433 (hereinafter "RRT"), and process may be served upon its statutory agent: MATTHEW J STOCKSLAGER, 3030 N CENTRAL AVE #1002, PHOENIX, AZ 85012.

## VENUE

8. Venue is appropriate in the United States District Court for the District of Arizona, Phoenix Division, in that the Defendant can be said to reside and/or do business in this district as required under 28 U.S.C. §§ 1391(a)(1), and (c).

## JURISDICTION

9. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) under Title VII, as amended, for employment discrimination and retaliation on the basis of sex.

10. This Court has supplemental jurisdiction of this action for breach of contract, as all claims within this Complaint are so related that they comprise one case, and all claims arise from the same operative facts.

11. The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL REQUISITES

12. All conditions precedent to the filing of this action have been met by Plaintiff in that he has filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and has received a right-to-sue letter from said agency to pursue his claims.

13. Plaintiff filed a Charge of Discrimination against Defendant with the EEOC on or about December 7, 2011.

14. On April 24, 2015, the EEOC issued Plaintiff a Notice of Right to Sue letter entitling him to file suit on his claims of discrimination based on sex and retaliation.

15. The filing of this lawsuit was accomplished within ninety (90) days of Plaintiff's receipt of notice from the EEOC.

16. Plaintiff filed this lawsuit in the United States District Court for the Southern District of Texas, Galveston Division, on June 22, 2015 asserting that jurisdiction was proper on the basis that a substantial part of the events occurred within that jurisdiction.

17. This case was dismissed without prejudice by the United States District Court for the Southern District of Texas, Galveston Division, on September 27, 2016.

## FACTS

On information and belief, Plaintiff alleges the following facts:

18. Plaintiff began working for Defendant in July 2008 as a Bio-Med Design Engineer (hereinafter "BMDE") at Saint Joseph's Hospital Medical Center, 350 West Thomas Rd, Phoenix, Arizona 85013.

19. Plaintiff is male.

20. Defendant maintained an Administrative Process and Procedure governing ownership, assignability, and compensation of employees for intellectual property created while working at Defendant (hereinafter "IP Policy") for both employees and nonemployees.

21. Plaintiff performed the duties of a BMDE, was, and continues to be, at all times, qualified for the position of a BMDE.

22. Plaintiff worked under the supervision of Robert Garfield, Ph.D. ("Garfield"), a male Research Scientist.

23. Garfield employed a team of five or six BMDEs and Research Scientists in his department at Defendant.

24. Garfield listed any scientific professionals on his team who worked on research related to any patent applications filed and any publications about that research, as is common practice in the scientific community.

25. Plaintiff worked in a remote location from Garfield at all times during his employment, rarely interfacing with Garfield, and separate from other employees on the team.

26. Plaintiff's work consisted of about 95% of computer or online work, analyzing data.

27. Defendant's research facilities and collaborative research locations included: Pennsylvania, Galveston, Houston, Phoenix, and other locations.

28. Plaintiff travelled to remote locations at least one time per year.

29. Garfield hired and retained a female employee, Leili Shi ("Shi").

30. Shi, at all times of her employment and Plaintiff's employment with Defendant, was Garfield's romantic live-in partner.

31. Garfield ensured that Shi remained employed with Defendant, regardless of reductions in force, to the detriment of male employees who were terminated in order to retain Shi.

32. Garfield continuously discriminated against Plaintiff by offering less favorable conference assignments, while taking Shi to more prestigious and acclaimed international conferences as his "date" and a research professional for Defendant.

33. In 2010, Garfield terminated a male Research Scientist Yuan L. Dong, Ph.D. (hereinafter "Dong") in a reduction of force, despite the fact that Dong possessed a Ph.D. degree and was more qualified than Shi.

34. Plaintiff, due to his gender, was treated less favorably than Shi because Garfield preferred his female employee and romantic live-in partner for the purposes of travelling to conferences and in decisions to terminate or retain employees.

35. Dong, due to his gender, was treated less favorably than Shi because Garfield preferred his female employee and romantic live-in partner for the purposes of making decisions to terminate employees in a reduction in force.

36. Soon after Dong's termination, Ron Lucas, Ph.D. (hereinafter "Lucas"), Director at Saint Joseph's Hospital and Medical Center, conducted an internal investigation of Garfield's laboratory.

37. Lucas intended to meet with each staff member working with Garfield in his laboratory.

38. Garfield approached Plaintiff prior to his meeting with Lucas to "warn" about the meeting.

39. Fearing termination, given Dong's recent termination and Garfield's "warning," Plaintiff did not complain to Lucas at that time.

40. After meeting with Lucas, Garfield requested Plaintiff to "take a ride" with him in his car to be briefed on the content of the internal investigation.

41. Garfield thanked Plaintiff for not raising any issues with the way he ran his laboratory, insinuating the reference to Shi's continued employment and preferred status.

42. As a result of Lucas' investigation, Shi was "reassigned" to report to David Balducci, Ph.D. (hereinafter "Balducci").

43. Shi's work, reporting structure, or location did not change after an investigation and reassignment to report to Balducci.

44. Balducci did not visit Shi at Garfield's laboratory, where she continued to perform work.

45. Plaintiff, following the investigation and subsequent lack of action on behalf of Defendant, feared termination for speaking up regarding Shi's employment and preferential treatment in Garfield's laboratory, based upon sex.

46. On November 1, 2010, Plaintiff, prepared a research grant application for uterine stimulation to fund a joint collaboration with Defendant and Obstetric Solutions and Interventions, LLC for the Bill and Melinda Gates Foundation, for $100,000.00.

47. This $100,000.00 grant application was approved by the Bill and Melinda Gates Foundation, ensuring funding for a research engineer or BMDE.

48. The grant application with the Bill and Melinda Gates Foundation was approved, and an additional $100,000.00 was granted to Defendant.

49. In December 2010, Plaintiff relocated to Texas, and anticipated working and living in Texas for an extended period of time.

50. Prior to Plaintiff's relocation, Defendant and Garfield agreed to Plaintiff's continued remote working in Texas for an extended period of time, in three locations: Plaintiff's home, the UTMB and RRT.

51. Garfield sent numerous e-mail communications indicating that Plaintiff would continue to work with Defendant remotely for an extended period of time, and providing instructions to colleagues and collaborators.

52. Plaintiff continued to email, telephone, and visit in person, locations at the UTMB and RRT, where Defendant's work was performed under the supervision of Garfield.

53. For all years prior to 2011, Plaintiff received only perfect scores on all performance evaluations.

54. At no time did Garfield express concern about Plaintiff's remote work with Defendant from home, at the UTMB, or at RRT.

55. Suddenly, in mid-August 2011, after nearly a full year of remote work without any verbal or written warning, Garfield submitted an extremely negative employee performance evaluation, making unsubstantiated allegations that Plaintiff was not performing work.

56. On August 29, 2011, Plaintiff filed a complaint with Defendant's Human Resources Department alleging Garfield's employee performance evaluation was fabricated.

57. Defendant's Human Resources Department did not investigate Plaintiff's complaint.

58. On October 11, 2011, Plaintiff complained to Herbert Vallier, Senior Vice President of Defendant's Human Resources Department of sex discrimination by Garfield.

59. Defendant did not investigate Plaintiff's complaint of sex discrimination, caused by Garfield's elimination of male employees in favor of Shi, a female employee.

60. On October 17, 2011, just six (6) days later and in retaliation for the two (2) open complaints with Defendant's Human Resources Department, Defendant terminated Plaintiff due to a "reduction of force," but in truth, due to his sex and as retaliation for his complaining about unlawful discrimination.

61. Defendant continued to employ Shi, over more qualified male employees, as with the decision to terminate Dong and Plaintiff.

62. Defendant's IP Policy provided that Plaintiff and other inventors would receive compensation for contributions to intellectual property.

63. Prior to Plaintiff's complaints of sex discrimination, Defendant included Plaintiff as an author and inventor on publications and patent applications filed for work performed in Garfield's laboratory.

64. After Plaintiff's complaints of sex discrimination, Defendant refused to list Plaintiff as an author or inventor on work he performed while working for Defendant.

65. Defendant listed Shi as an author and inventor on publications and patents for work arising from Garfield's laboratory, despite that Shi was allegedly no longer working with Garfield and supervised by Balducci.

66. Plaintiff, by not being listed as an author on work performed for Defendant, suffered loss to his professional value in the form of lower income, as it appears he did not contribute to the substantial scientific research while working with Defendant.

67. Plaintiff, by not being listed as an inventor on all patent applications does not share in the profit sharing provided under Defendant's IP Policy.

## COUNT I

## TERMINATION ON THE BASIS OF SEX

68. Plaintiff re-alleges and incorporates into count one paragraphs 16-59.

69. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII, because of sex.

70. Defendant, acting by and through its employees, maintained a policy of sex discrimination, in violation of the foregoing statutes against Plaintiff.

71. If Plaintiff was not male, he would not have been terminated.

## COUNT II

### TERMINATION ON THE BASIS OF RETALIATION

72. Plaintiff re-alleges and incorporates into count two paragraphs 16-65.

73. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII, because of its retaliation for complaints of sex discrimination.

74. Defendant, acting by and through its employees, maintained a policy of retaliation, in violation of the foregoing statutes against Plaintiff.

75. If Plaintiff had not complained of sex discrimination, he would not have been terminated.

## COUNT II

### BREACH OF CONTRACT

76. Plaintiff re-alleges and incorporates into count eight paragraphs 16, 18, 54-65.

77. Defendant, by and through its agents and employees, intentionally breached the terms of the Defendant's IP Policy between Defendant and Plaintiff and its agreement with Plaintiff to compensate Plaintiff according to the profit sharing compensation structure for being listed as an inventor in patents issued to Defendant.

## DAMAGES

78. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to loss of profit sharing in Defendant's IP Policy and diminished salary expectations due to exclusion from patent applications and publications.

## EXEMPLARY DAMAGES

79. Defendant's actions were intentional, willful, harsh, oppressive, and malicious, and as a further and proximate cause, Plaintiff has suffered severe financial damages. The wrongs done by the Defendant were aggravated by the kind of willfulness, wantonness and malice for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## ATTORNEY'S FEES

80. Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of COANE and ASSOCIATES, PLLC, in order to initiate this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## JURY DEMAND

81. Plaintiff hereby makes his request for a jury trial.

## PRAYER

82. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

a. Back Pay;

b. Pre-Judgment Interest on Back Pay;

c. Front Pay;

d. Compensatory Damages, including but not limited to damages for diminished salary expectations and loss of profit-sharing under Defendant's IP Policy;

e. Liquidated Damages;

f. Punitive Damages;

g. Injunctive and Affirmative Relief;

h. Attorney's Fees and Costs;

i. Such other and further relief, at law or in equity, general or special to which Plaintiff may show he is justly entitled.

October 18, 2016

Respectfully submitted,
COANE AND ASSOCIATES, PLLC
**By: /s/ Bruce Coane**
Bruce A. Coane
S.D. Tex. #7205
Email: bruce.coane@gmail.com
Coane and Associates, PLLC
5177 Richmond Ave, Suite 770
Houston, Texas 77056
Telephone: 713.850.0066
Facsimile: 713.850.8528
***ATTORNEYS FOR PLAINTIFF***

# FedEx US Airbill

FedEx Tracking Number: 8109 6578 2427
Form ID No. 0215

**1 From**
Date: 10-19-2016
Sender's Name: Connor Throckmorton
Phone: 713 850-0056
Company: COANE, BRUCE, ATTORNEY
Address: 5177 RICHMOND AVE STE 770
City: HOUSTON   State: TX   ZIP: 77057

**2 Your Internal Billing Reference:** Maner William

**3 To**
Recipient's Name: Attn: Attorney Admissions
Phone: 602 322-7106
Company: U.S. District of Arizona, Phoenix Division
Address: Sandra Day O'Connor U.S. Courthouse, 130
Address: 401 West Washington Street, SPC 1
City: Phoenix   State: AZ   ZIP: 85003-2118

FILED RECEIVED COPY
OCT 21 2016
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**4 Express Package Service**
[X] FedEx 2Day

**5 Packaging**
[X] FedEx Envelope

**6 Special Handling and Delivery Signature Options**
[X] Direct Signature
Does this shipment contain dangerous goods?
[X] No

**7 Payment** Bill to:
[X] Sender

0125043209

611